*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 27, 2020

**BY ECF**

Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

  Re: *United States v. Robert Locust*, S1 18 Cr. 289 (SHS)

Dear Judge Stein:

  The Government respectfully submits this letter in response to defendant Robert Locust's January 23, 2020 (Dkt. No. 245) and March 31, 2020 (Dkt. No. 266) submissions, which asked the Court to modify the previously announced sentence of 60-months' imprisonment and instead impose a sentence of time served and to order that Locust pay no restitution to the victims of his crime. For the reasons that follow, Locust's applications should be denied.

## Restitution

  On January 7, 2020, the Court sentenced Locust to 60-months' imprisonment. At sentencing, the Court deferred the issue of restitution at the Government's request so that the Government could continue to gather additional information regarding the harm incurred to victims from Locust and his coconspirators' fraud scheme (the "Fraud Scheme"). On March 9, 2020, the Government filed under seal a proposed restitution order for Locust in the amount of $3,928,133.60 (the "Proposed Restitution Amount") and a letter brief setting forth the bases of the Proposed Restitution Amount. On March 31, 2020, Locust filed an objection to the proposed restitution order and argued that "no amount of 'restitution' should be ordered against [Locust]." (Dkt. No. 266 at 1.) In arguing that the Court should order no restitution, Locust makes three principal arguments: (1) restitution under the Mandatory Victims Restitution Act (the "MVRA") is limited to loss of income and expenses such as childcare and transportation; (2) Locust obtained "very little of value" as a result of his fraud scheme; and (3) Locust does not have the means to pay the Proposed Restitution Amount. (*See* Dkt. No. 266 1-6.) As set forth below, each argument lacks merit.

  First, restitution is *mandatory* to compensate victim losses in this case. "The [MVRA] requires restitution in criminal cases where the offense is 'an offense against property, including any offense committed by fraud or deceit,' 18 U.S.C. § 3663A(c)(1)(A)(ii), and where 'an identifiable victim has suffered a pecuniary loss.'" *United States v. Ojeikere*, 545 F.3d 220, 222

(2d Cir. 2008). "The primary and overarching goal of the MVRA is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." *United States v. Qurashi*, 634 F.3d 699, 703 (2d Cir. 2011). Thus, the MVRA "makes restitution *mandatory* for losses suffered by victims of certain crimes and directs that restitution orders be issued and enforced in accordance with § 3664." *United States v. Lucien*, 347 F.3d 45, 53 (2d Cir. 2003) (emphasis added). Because Locust was convicted of conspiracy to commit mail and wire fraud (crimes against property), and because the victims identified in the Government's March 9 letter suffered pecuniary losses, Locust is required to pay restitution under the MVRA.

Locust's argument that the MVRA only compensates victims for certain "expenses" such as their childcare costs and transportation costs is without merit. Section 3663A(b)(1)(B)(i)(I) broadly provides for restitution for pecuniary loss, requiring the amount of restitution to include "the value of the [victim's] property on the date of the loss." As set forth in the Government's March 9 letter, the Proposed Restitution Amount reflects the amount of money that some of the victim insurance companies paid out on fraudulent cases. *See Lucien*, 347 F.3d at 52-54 (affirming restitution order requiring defendant who staged motor vehicle accidents to reimburse victim insurance carrier for its losses, including the amount of funds that the insurance company paid as part of a settlement).

In arguing that the MVRA limits restitution to expenses such as childcare cost, Locust narrowly relies on Section 3663A(b)(4) of the MVRA, while ignoring the broader statute. That particular section provides that "in any case" in which the MVRA applies, the defendant must "reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution . . . ." That section does not limit the types of victim expenses/losses that are compensable under the MVRA. Rather, it clarifies that childcare and transportation costs are *also* compensable under the MVRA. Locust's reliance on *United States v. Lagos*, 138 S. Ct. 1684 (2018), is also misplaced. In *Lagos*, the Supreme Court addressed what type of private investigative costs are recoverable under Section 3663A(b)(4) of the MVRA. *Lagos* did not hold, or in any way suggest, that the MVRA limits restitution to the expenses set forth in Section 3663A(b)(4). Indeed, the defendant in *Lagos* did not even challenge the portion of the restitution order that directed him to pay more than $11 million in loan proceeds that he obtained fraudulently from the victim. *See* Brief for the Petitioner, *Lagos v. United States*, 2018 WL 1110042 (U.S.), note 11 (2018).

Finally, Locust's mandatory restitution obligation is not impacted by the degree to which he profited from the fraud. In arguing that he should not be required to pay restitution because he "obtained very little of value in this fraud" (Dkt. No. 266 at 2), Locust misapprehends the purpose of restitution. Unlike forfeiture—a tool that prevents criminals from profiting from their criminal activities—restitution is designed to reimburse victims for their losses. *See Qurashi*, 634 F.3d at 703 (noting that the primary goal of the MVRA is to "make victims of crime whole"). Thus, the money that Locust derived from the Fraud Scheme is irrelevant in calculating his restitution obligation. *See United Staets v. Zangari*, 677 F.3d 86, 92-93 (2d Cir. 2012) ("[S]entencing court ordering restitution under the MVRA may not substitute a defendant's ill-gotten gains for the victim's actual loss.").

Finally, Locust's argument that he should not be ordered to pay restitution because he is unable to pay it (Dkt. No. 266 at 6) is foreclosed by the MVRA. A defendant's financial resources are irrelevant in determining the amount of restitution owed to his or her victims. In imposing restitution, district courts are required to "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. §§ 3664(f)(1)(A); 3663A(d). Locust's ability or inability to pay restitution has no bearing on the Proposed Restitution Amount. In any event, as set forth in the proposed restitution order, the Court can order Locust to pay the Proposed Restitution Amount in installments that are tailored to his income. *See* 18 U.S.C. §§ 3572(d)(1) and (2).

## Reconsideration of 60-Month Sentence

On January 23, 2020, Locust filed a letter asking the Court to reconsider the previously announced sentence of 60-months' imprisonment. (Dkt. No. 245.) Locust argued that his sentence should be reduced because, according to Locust, his entrée to the mail and wire fraud conspiracy was occasioned by his affection for Peter Kalkanis and not greed. On March 31, 2020, Locust supplemented his January 23 submission, asking the Court to impose a sentence of time served in light of the COVID-19 pandemic. (Dkt. No. 266.) As set forth below, Locust's arguments lack merit and are otherwise unpersuasive.

First, Locust continues to argue that he was merely a driver. (*See* Dkt. No. 245 at 2 "Mr. Locust simply drove people to doctors' and lawyers' appointments in a safe, reliable manner," and Dkt. No. 266 at 3 "LOCUST's involvement in the fraud [was] basically as a driver . . .".) This argument was contrary to the facts established at trial and has already been rejected by the Court. As the Court observed at sentencing, Locust "was not just a driver." (Jan. 7, 2020 Sentencing Tr. (the "Sentencing Tr.") at 15.) Rather, "[h]e was integrally involved here. He recruited people, he drove people around, he made payments . . . to both victims and doctors." (Sentencing Tr. at 12.) The Court's observations were correct. Contrary to the assertions in his January 23 submission, Locust recruited multiple individuals into the Fraud Scheme to stage accidents, including an individual with mental health issues. (*See, e.g.*, GXs 532-535; Tr. 551-552; 562-563.) He also instructed his recruits on how to stage accidents (Tr. 548), and what to tell the doctors and lawyers. (Tr. 543-544, 556). Locust was also one of the primary runners who drove patients to medical and legal appointments. As he acknowledges, Locust drove carloads of patients for more than two years.[1] Without runners like Locust who transported patients, the conspiracy would not have worked (or at least would not have been so successful). Because Locust and his co-conspirators recruited homeless people and individuals struggling with addiction, many of the patients did not have the means to transport themselves to medical procedures and appointments that were used to

---

[1] That Locust supposedly ceased recruiting patients into the fraud scheme once he learned of the FBI's investigation is neither mitigating nor exculpatory. Rather, it reflects his consciousness of guilt. Kalkanis testified at trial that when he informed Locust that the FBI had arrested Dewitt, Locust seemed visibly nervous and indicated he thought that Kalkanis and Locust were next to get arrested. (Tr. 1109.)

increase the value of the patients' lawsuits. Thus, Locust's repeated attempts to minimize his role are unpersuasive.

Locust's new argument that he was motived by his affection for Peter Kalkanis and not greed is contrary to the trial record, his own statements at sentencing, and his attorneys' prior arguments. The record demonstrates that Locust participated in the fraud scheme to earn money. Reginald Dewitt testified at trial that Locust said that he wanted to recruit more people to stage accidents "so he could receive larger pay." (Tr. 223.) Locust confirmed this at his sentencing when he told the Court: "I got involved and, you know, it was good. I mean, I made money . . . ." (Sentencing Tr. at 23.) Likewise, when asked why Locust joined the conspiracy, Locust's counsel argued at sentencing, "We have a situation where Mr. Locust was not well off, didn't have a great job, didn't have a great means to support himself." (Sentencing Tr. at 18.) Counsel's new argument, that Locust primarily was motived by a desire to appease Kalkanis, is thus contrary to the record.

Finally, Locust's argument that the Court should impose a sentence of time served because of the COVID-19 pandemic is entirely unpersuasive. First, even if the Court were to consider COVID-19 in determining whether it should reconsider Locust's 60-month sentence, Locust offers no facts to suggest that Locust has any medical conditions that place him at higher risk for severe illness. Nor can he; the Presentence Investigation Report indicates that Locust is in good health. (PSR at 16.) Instead, Locust relies on the general risk that all people face. Under Locust's reasoning, all non-violent offenders should be released or, in the case of Locust, never have to serve jail time. Second, *United States v. Knox*, 15 Cr. 445 (PAE), on which Locust primarily relies, is entirely inapposite. That case involved a compassionate release motion by a high-risk defendant who served all but seven months of his 88-month sentence. Locust has served zero days in prison and is not high-risk. Third, to address any COVID-19 related health concerns, the Government would consent to an adjournment of Locust's surrender date for 60 days or more after the sentence is officially imposed.

For all of these reasons, the Court should not disturb the already-announced sentence of 60-months' imprisonment and should order Locust to pay restitution in the amount of $3,928,133.60.

                Respectfully submitted,

                GEOFFREY S. BERMAN
                United States Attorney

by:   /s/
                Nicholas W. Chiuchiolo
                Nicholas Folly
                Alexandra Rothman
                Assistant United States Attorneys
                (212) 637-1247 / 1060 / 2580

cc: Anthony Cecutti, Esq. (by ECF)
    Mitchell Dinnerstein, Esq. (by ECF)